CASE 83—ACTION FOR LOSS OF PROPERTY AGAINST SLEEP-
ING CAR COMPANY—JAN. 12.

# Pullman Palace Car Co. v. Hunter.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. INSTRUCTION—PEREMPTORY.—A peremptory instruction is properly denied where there is any evidence conducing to establish plaintiff's right of recovery.
2. SLEEPING CAR COMPANIES—DUTY OF, TO PROTECT PASSENGERS.—It is the duty of a sleeping car company to keep a reasonable watch over the safety of its passengers and their property, and if it fails to do so and by reason of such failure the property of a sleeping passenger is stolen, the company is liable.

PHELPS & THUM FOR APPELLANT.

The peremptory instruction to find for the defendant should have been given. There was no evidence of negligence upon which to predicate a recovery. Pullman Palace Car Co. v. Gaylord, 6 Ky. Law Rep., 279; Pardee v. Tyler, 1 Ry. & Corp. Journal, p. 490; Dargen v. Pullman Pal. Car Co., 26 Am. & Eng. Ency. of Law, 149; Keith v. Pullman Pal. Car Co., Chicago Legal News, vol. 17, p. 196.

Pullman Palace Car Co. v. Hunter.

BENNETT H. YOUNG for appellee.

There was evidence of negligence sufficient to go to the jury
and upon the measure of responsibility the court correctly in-
structed the jury. 15 Ency. of Pl. & Pr., pp. 400, 401; Larman
v. Huey's hrs., 13 B. Mon., 437; Froman v. Com., 42 S. W. R.,
728; Palmeter v. Wagner, 11 Albany Law Journal, 149; Plum
v. Pullman Pal. Car Co., 3 Cent. L. Jour., 592.

JUDGE BURNAM delivered the opinion of the court.

This was a suit to recover the value of three diamond
rings alleged to have been stolen from appellee whilst she
was asleep in one of defendant's cars, and which loss
she alleged resulted from the failure of defendant's agents
and employes in charge of the car to use ordinary care and
watchfulness to protect her and her property from thieves,
as was their duty to do under the law.

The defendant denied that its agents were guilty of any
carelessness, negligence or misconduct in the discharge
of their duties to the plaintiff, or that the loss of her
rings was due to failure on their part to exercise ordinary
care and watchfulness to prevent such loss.

The trial resulted in a verdict and judgment for plaintiff
for $250, which the defendant moved the court to set aside,
and grant it a new trial, upon the ground that the verdict
was contrary to the law and evidence, and that the court
erred in refusing to give a peremptory instruction.

It appears from the testimony that appellee, a young
lady under twenty-one years of age, rented lower berth
No. 11 of defendant's sleeping car, which left St. Louis,
Missouri, on the night of September 26, 1895, for Louisville,
Kentucky, over the Baltimore & Ohio Southwestern Rail-
road, paying $2 for the use thereof, and whilst she was
asleep three diamond rings belonging to her, and which
were of the value of $250, were stolen from her finger.
The testimony of the employes of defendant shows that

there were three sleeping cars attached to the train when it left St. Louis, all of which were in the charge of a single conductor, but that each car had its separate porter; that at North Vernon, Indiana, the sleeping car destined for Louisville was detached from the train with which it had been connected, and attached to another locomotive, which brought it into Louisville; that at this point another conductor took charge of the car, but that it was not a part of the duty of either conductor to keep any special watch over the person or property of the sleeping passengers; that this matter was left entirely to the porter, a colored man, by the name of Greene, who testified that this was his first trip over that route; that his regular run was from St. Louis to El Paso, Texas, which took three nights and two days, and required that he should be continually on duty eighteen hours out of each twenty-four; that he arrived in St. Louis from this trip on the morning of September 26, 1895; and that, owing to the inability of the regular porter to make the trip to Louisville, he was detailed by defendant's officers to make this extra trip. He says that, after making down the various berths, he stood in the aisle at the gentlemen's end of the car, blacking the boots of the male passengers but that he made frequent visits to the smoking room, to see if anything was wanted; that when his car arrived at Vincennes and North Vernon, Indiana, he locked the back door of the coach, and walked out the front door, and stood on the steps of the vestibule while the train remained at each of these places for about twenty minutes; and that during this time there was no officer or agent of the company on duty inside the coach.

Conductor King, who took charge of the car at North

Vernon, says that when he got on the car no agent of the company, except the porter, was on duty.

The main inducement offered to the traveling public to occupy sleeping cars, and to pay the extra fee charged therefor, is that the fatigue and discomfort of railroad travel is in some degree ameliorated by being able to sleep with security; and the company, in advertising its accommodations for sleeping, and accepting compensation therefor, becomes thereby obligated to keep a reasonable watch over the safety of its sleeping passengers and their property; and this seems to be the measure of their responsibility as defined by other courts.

In the case of Plum v. Pullman Sleeping Car Co. (decided by the United States Circuit Court in Tennessee), [13 Alb. Law J., 221], it was held that "the company must take reasonable care of its guests and their property, especially while said guests were asleep."

In Palmeter v. Wagner, [11 Alb. Law J., 149], the marine court of New York held that "sleeping-car companies must, by a reasonable watch, protect a passenger and the property about his person during sleep;" and in the case of Woodruff S. & P. Coach Co. v. Diehl, 84 Ind., 474, [43 Am. R., 102], the company was held liable for the loss of a pocketbook and watch because of failure to keep a sufficient watch during the night, and to take reasonable care to prevent thefts.

It seems to us that the instructions given in this case go no further than to require at the hands of appellant a faithful performance of this duty.

We are of the opinion that the motion for a peremptory instruction was properly overruled under the rule, which has been established by numerous decisions of this court, that it is improper to give a peremptory instruc-

tion for the defendant when there is any evidence which conduces to establish the right of recovery.

The fact that the sole person whose duty it was, under the rules of the company, to keep a lookout in the car, had arrived in St. Louis, on the morning of the day on which this train left, after a long and fatiguing passage from El Paso, Texas, certainly to some extent disqualified him from the duties of a watchman on the succeeding night; and when there is added the fact that at least on two occasions during the night he voluntarily absented himself from the car for a period of at least twenty minutes on each occasion, it furnishes some evidence conducing to show negligence on the part of the agents of the company, and authorized the submission of the case to the jury.

For the reasons indicated, the judgment is affirmed.